UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
MICHAEL MARCAVAGE and
STEVEN C. LEFEMINE,                                          05 CV 4949 (RJS)(JCF)

                    Plaintiffs,

          -versus-                                                    .

THE CITY OF NEW YORK,                                       ECF CASES
RAYMOND KELLY, in his individual
And official capacity as the Commissioner
Of The New York City Police Department,
CAPTAIN STAPLES, and AS YET
UNKNOWN OFFICERS, in their individual
Capacities and official capacities as police
Officers for the New York City Police
Department,

                    Defendants.
--------------------------------------------------------x

## DEFENDANTS' REPLY STATEMENT OF UNDISPUTED FACTS
## IN SUPPORT OF THEIR MOTION FOR
## SUMMARY JUDGMENT ON ALL CLAIMS

Defendants hereby reply to "Plaintiffs' Response to Defendants' Statement of Undisputed Facts." For the convenience of the Court, defendants restate here in bold type face each fact as it was stated in "Defendants' Statement of Undisputed Facts," immediately followed by defendants' reply to "Plaintiffs' Response to Defendants' Statement of Undisputed Facts."

### Facts Related To Security, Public Safety
### And Traffic Flow Concerns Around MSG

1.       **The Republican National Convention ("RNC" or "Convention") was held at Madison Square Garden ("MSG") from Monday, August 30, 2004 through Thursday, September 2, 2004. Declaration of Bruce Smolka ("Smolka Dec.") (Exhibit E) at ¶ 2.** This fact is undisputed by plaintiffs.

2.     **The NYPD was the lead local law enforcement agency with responsibility for security and public safety during the Convention.** Smolka Dec. at ¶ 2. This fact is undisputed by plaintiffs.

3.     **The NYPD began preparing and planning for the Convention in early 2003 and continued up and through the Convention.** Smolka Dec. at ¶ 2. This fact is undisputed by plaintiffs.

4.     **Among other responsibilities, Chief Smolka was co-chair of the Site Security Committee.** Smolka Dec. at ¶ 3. This fact is undisputed by plaintiffs.

5.     **The Site Security Committee was responsible for a variety of security and planning issues including security and planning in and around MSG.** Smolka Dec. at ¶ 3. This fact is undisputed by plaintiffs.

6.     **MSG is situated in midtown Manhattan and occupies the entire area from 31st Street to 33rd Street and from 7th Avenue to 8th Avenue.** Smolka Dec. at ¶ 4. The fact that MSG is situated in Midtown Manhattan is undisputed by plaintiffs. Plaintiffs dispute that MSG occupies the "entire area" from 31st to 33rd Street and from 7th to 8th Avenue, but that dispute is not material to any issue in this case.

7.     **The NYPD anticipated that the sheer size of the RNC event would place a tremendous strain on the department's resources and severely impact vehicular and pedestrian traffic flow throughout the City and in and around MSG.** Smolka Dec. at ¶ 4. This fact is undisputed by plaintiffs.[1]

---

[1] Plaintiffs routinely interject legal argument into their Response Statement of Facts. This practice is improper, defendants do not respond to it because it is improper, and plaintiffs' legal argument should not be considered. Defendants do not concede the arguments made by plaintiffs. Insofar as plaintiffs make only legal arguments, or make factual assertions that are themselves unsupported by substantial evidence in the record (as they do throughout their statement of facts), the Court should deem the defendants' factual assertion to be undisputed.

8. That part of Manhattan, particularly the streets, avenues and walkways in the immediate vicinity of MSG, is extremely congested with both vehicle and pedestrian traffic on a routine basis. **Smolka Dec. at ¶ 5.** This fact is undisputed by plaintiffs.

9. The condition is particularly acute when there is a major event at MSG, which can add thousands of additional pedestrians to the walkways in that immediate vicinity. **Smolka Dec. at ¶ 5.** This fact is undisputed by plaintiffs.

10. In addition, MSG sits atop Pennsylvania Station ("Penn Station"), through which up to 1300 trains run on a daily basis. They include Amtrak trains that run north and south between major cities along the eastern seaboard; the Long Island Railroad, which provides service to all of Long Island; New Jersey Transit rail lines servicing New Jersey and other regions; and the Seventh and Eighth Avenue New York City subway lines. **Smolka Dec. at ¶ 6.** This fact is undisputed by plaintiffs.

11. Up to 600,000 riders enter Penn Station each day. **Smolka Dec. at ¶ 6.** This fact is undisputed by plaintiffs.

12. Thus, from a security and policing standpoint, MSG and Penn Station offered unique challenges and vulnerabilities. **Smolka Dec. at ¶ 6.** This fact is undisputed by plaintiffs.

13. Furthermore, the NYPD anticipated that New York City (the "City") would see a volume of protest activity not seen in decades. **Smolka Dec. at ¶ 7.** This fact is undisputed by plaintiffs.

14. NYPD had information that potentially hundreds of thousands of protesters would come to the City to protest the Convention. **Smolka Dec. at ¶ 7.** This fact is undisputed by plaintiffs.

15.     **Organizers of the United for Peace and Justice anti-war march predicted that 250,000 people would participate in their march and rally alone. Smolka Dec. at ¶ 7.** This fact is undisputed by plaintiffs.

16.     **The NYPD also anticipated that individuals with opposing viewpoints would seek to express their messages. Smolka Dec. at ¶ 7.** This fact is undisputed by plaintiffs.

17.     **As the main venue for the RNC, the NYPD expected that MSG would be the location for large-scale protests and demonstrations. Smolka Dec. at ¶ 7.** This fact is undisputed by plaintiffs.

18.     **The City and the NYPD welcomed those seeking to exercise their First Amendment rights and sought to facilitate the exercise of those rights regardless of viewpoint. Smolka Dec. at ¶ 8.** Plaintiffs seek to dispute this fact, but they cite no pertinent evidence except the particular experience of the plaintiffs themselves. Plaintiffs also cite no evidence to dispute the fact that individuals were welcomed "regardless of viewpoint." The fact that plaintiffs were told that they could not stand at a particular location does not place into dispute the fact that the City sought to facilitate the exercise of First Amendment rights by, for instance, establishing a demonstration zone. Moreover, because the location of the demonstration zone is undisputed, the question of whether it was within "sight and sound" is a matter of law.

19.     **In order to facilitate planned protest events and accommodate other types of protest activities in and around the MSG area, part of the NYPD operational plan included the creation of a demonstration area beginning at 31st Street and 8th Avenue (directly adjacent to the southwest corner of MSG). Smolka Dec. at ¶ 8.** Plaintiffs seek to dispute this fact, but they cite no pertinent evidence. Plaintiffs also claim that the City "forced all expressive activity" into the demonstration zone "where attendees of the RNC could not see or hear the plaintiffs' expressive activity," but plaintiffs cite no evidence that supports either fact.

20.      **The area encompassed the entire width of the roadway of 8th Avenue and was designed to extend as far south as necessary to accommodate large numbers of demonstrators. Smolka Dec. at ¶ 8.** This fact is undisputed by plaintiffs.

21.      **Several events were planned during the week of the RNC in this demonstration area. Smolka Dec. at ¶ 8.** This fact is undisputed by plaintiffs.

22.      **The NYPD issued a number of sound permits for these events and also arranged for the placement of a stage at the northern end of the demonstration for any group that chose to use it during an event or protest. Smolka Dec. at ¶ 8.** This fact is undisputed by plaintiffs.

23.      **In addition, individuals wishing to exercise their First Amendment rights, regardless of viewpoint, could do so at any time during the RNC within the demonstration area. Smolka Dec. at ¶ 8.** This fact is undisputed by plaintiffs. Plaintiffs' suggestion that defendants *required* persons wishing to engage in expressive activity to do so in the demonstration zone is unsupported by any evidence in the record. The record does show that defendants made persons wishing to exercise their First Amendment rights *aware* of the demonstration zone and those persons could choose to go to that area or not.

24.      **In one instance, a large group of several thousand individuals who had previously not applied for or requested a parade permit were escorted by NYPD from Dag Hammerskold Plaza near the United Nations across Manhattan and into the demonstration area. Smolka Dec. at ¶ 8.** This fact is undisputed by plaintiffs.

25.      **To create the demonstration area at that location, the NYPD blocked off vehicle traffic on 8th Avenue (a main vehicle thoroughfare) in midtown. Smolka Dec. at ¶ 9.** This fact is undisputed by plaintiffs.

26.     To assure that everyone who wished to exercise their First Amendment rights in the demonstration area could do so, NYPD officers constantly monitored and were prepared to expand that zone on short notice by blocking off additional blocks of 8th Avenue. Smolka Dec. at ¶ 9.  This fact is undisputed by plaintiffs.

27.     In fact, the demonstration area was used by thousands of individuals during the RNC. Smolka Dec. at ¶ 9.  This fact is undisputed by plaintiffs.

28.     The NYPD actively sought to assure that the demonstration area was safe for anyone who sought to express himself or herself regardless of viewpoint.  Smolka Dec. at ¶ 10.  This fact is undisputed by plaintiffs.

29.     The demonstration area was monitored constantly by officers to assure that individuals assembled there could express themselves without concern that other individuals in the area (who may have had differing views) would retaliate or take other action against them. Smolka Dec. at ¶ 10.  This fact is undisputed by plaintiffs.

30.     In addition, the NYPD understood that political conventions are potential terrorist targets and had to prepare for the possibility of groups and individuals who sought to engage in criminal conduct that could significantly endanger public safety.  Smolka Dec. at ¶ 11. This fact is undisputed by plaintiffs.

31.     Because MSG was the main venue for the RNC, and NYPD expected that it would be a main object of protest and demonstration activity, a variety of security measures were required in and around MSG.  Smolka Dec. at ¶ 11.  This fact is undisputed by plaintiffs.  In their response, plaintiffs seek to dispute *other* facts and issues, but that argument is unresponsive to the foregoing fact.  In addition, plaintiffs cite no evidence to support their other contentions.

32.     The purpose of the security measures taken in the vicinity of MSG was, among other things, to protect the President, Vice President, and numerous others who attended

the Convention. **Smolka Dec. at ¶ 12.** Plaintiffs seek to dispute this fact, but their argument is unresponsive to the foregoing fact. In addition, plaintiffs cite no evidence that supports their other contentions.

33.     **As many as 50,000 people were expected to participate including approximately 2509 delegates, 2344 alternates, 15,000 members of the media/press, 15,000 donors, governors, congressional delegations and staff, and 15,000 family, friends and other RNC visitors. Smolka Dec. at ¶ 12.** This fact is undisputed by plaintiffs.

34.     **In addition, the NYPD was responsible for ensuring the safety of the City's own citizens, its visitors, and its buildings and property, while at the same time minimizing inconvenience to commuters, businesses and residents in the vicinity of MSG. Smolka Dec. at ¶ 12.** This fact is undisputed by plaintiffs.

35.     **To assure security, the NYPD implemented a series of security zones around MSG that allowed for control of ingress and egress as well as the quick closure of the area in the event of a catastrophic incident. Smolka Dec. at ¶ 13.** This fact is undisputed by plaintiffs. Plaintiffs' claims that the perimeters of the various zones were not "well known" to the officers, and that the nomenclature applied by the various officers to the zones differed, are unresponsive to the foregoing fact. In addition, they are immaterial because there is no dispute that plaintiffs were standing in and were arrested in the "no standing" area.

36.     **Pedestrian traffic both within and in the vicinity outside MSG was restricted in various ways. Smolka Dec. at ¶ 13.** This fact is undisputed by plaintiffs. Plaintiffs argue about several other facts. Plaintiffs' argument that "pedestrian traffic was not restricted on the sidewalk along the eastern side on 7th Avenue between 33rd and 32nd Street" is unsupported by citation to any evidence. In addition, plaintiffs offer no evidence that shows that 32nd Street was "dedicated to

pedestrian traffic" or that "7th Avenue was closed to vehicular traffic" at the time of the incident.  In any event, those facts are immaterial for the reasons set forth in Defendants' Brief.

37.  **For instance, two of the entrances to Penn Station (at 31st Street and 8th Avenue and at 33rd Street and 8th Avenue) were closed in their entirety.  Smolka Dec. at ¶ 13.** This fact is undisputed by plaintiffs.  Plaintiffs' suggestion that there "was also an additional entrance to Penn Station" is not responsive to the foregoing fact.  In addition, it is immaterial for several reasons including that plaintiffs have offered no evidence of whether that entrance was available to pedestrians at the time of the incident.

38.  **In addition, the NYPD implemented a "frozen zone" that prohibited pedestrian traffic on the west sidewalk of 7th Avenue between 31st Street and 33rd Street.  Smolka Dec. at ¶ 13.** This fact is undisputed by plaintiffs.  Plaintiffs' argument about the perimeters and nomenclature applied to the various zones is immaterial.

39.  **Barriers were erected along the 7th Avenue curb line, on the west side of the avenue, to assist enforcement of this prohibition.  Smolka Dec. at ¶ 13.** This fact is undisputed by plaintiffs.  It is material because (among other things) it suggests that, with the western sidewalk closed, foot traffic on the eastern sidewalk of 7th Avenue would have been heavier than usual, which supports the "no standing" policy.

40.  **The NYPD also implemented a "no-standing" restriction on the east sidewalk of 7th Avenue between 31st and 33rd Street.  Smolka Dec. at ¶ 14.** Plaintiffs seek to dispute this fact, but the testimony they cite either does not support their position at all or, when read in context with other testimony by the same witnesses, suggests that plaintiffs have mischaracterized that witness' testimony.

41.  **On the east sidewalk of 7th Avenue between 31st and 33rd Street, pedestrians were permitted to walk but were required to keep moving and not to congregate.  Smolka Dec. at**

pedestrian traffic" or that "7th Avenue was closed to vehicular traffic" at the time of the incident.  In any event, those facts are immaterial for the reasons set forth in Defendants' Brief.

37.  **For instance, two of the entrances to Penn Station (at 31st Street and 8th Avenue and at 33rd Street and 8th Avenue) were closed in their entirety.  Smolka Dec. at ¶ 13.** This fact is undisputed by plaintiffs.  Plaintiffs' suggestion that there "was also an additional entrance to Penn Station" is not responsive to the foregoing fact.  In addition, it is immaterial for several reasons including that plaintiffs have offered no evidence of whether that entrance was available to pedestrians at the time of the incident.

38.  **In addition, the NYPD implemented a "frozen zone" that prohibited pedestrian traffic on the west sidewalk of 7th Avenue between 31st Street and 33rd Street.  Smolka Dec. at ¶ 13.** This fact is undisputed by plaintiffs.  Plaintiffs' argument about the perimeters and nomenclature applied to the various zones is immaterial.

39.  **Barriers were erected along the 7th Avenue curb line, on the west side of the avenue, to assist enforcement of this prohibition.  Smolka Dec. at ¶ 13.** This fact is undisputed by plaintiffs.  It is material because (among other things) it suggests that, with the western sidewalk closed, foot traffic on the eastern sidewalk of 7th Avenue would have been heavier than usual, which supports the "no standing" policy.

40.  **The NYPD also implemented a "no-standing" restriction on the east sidewalk of 7th Avenue between 31st and 33rd Street.  Smolka Dec. at ¶ 14.** Plaintiffs seek to dispute this fact, but the testimony they cite either does not support their position at all or, when read in context with other testimony by the same witnesses, suggests that plaintiffs have mischaracterized that witness' testimony.

41.  **On the east sidewalk of 7th Avenue between 31st and 33rd Street, pedestrians were permitted to walk but were required to keep moving and not to congregate.  Smolka Dec. at**

¶ **14.** Plaintiffs seek to dispute this fact, but their response is unresponsive to the fact at issue. In addition, they cite no evidence from the record in support of their argument except plaintiffs' own testimony. This is insufficient to create a genuine dispute.

42.    **That requirement was intended to keep those streets and sidewalks free from congestion, promote the public safety, and minimize the inconvenience to commuters, businesses and residents. Smolka Dec. at ¶ 14.** Plaintiffs seek to dispute this fact, but their argument is unresponsive to the fact in issue and they cite no evidence from the record that supports their position. Therefore, this fact should be deemed undisputed.

43.    **Between 31st Street and 33rd Street, pedestrians were not permitted to step into the street or to cross 7th Avenue, except at the intersection of 32nd Street and 7th Avenue. Smolka Dec. at ¶ 15.** This fact is undisputed by plaintiffs.

44.    **Barriers were erected along the 7th Avenue curb line, on the east side of the avenue, to assist enforcement of this prohibition. Smolka Dec. at ¶ 15.** This fact is undisputed by plaintiffs.

45.    **At the 32nd Street intersection, a crosswalk remained open that allowed entry to and exit from MSG and Penn Station. Smolka Dec. at ¶ 15.** This fact is undisputed by plaintiffs.

46.    **Several subway lines also discharged passengers through exits at that intersection. Smolka Dec. at ¶ 15.** This fact is undisputed by plaintiffs.

47.    **At the crosswalk across 7th Avenue at 32nd Street, pedestrians were permitted to walk but were required to keep moving and not to congregate. Smolka Dec. at ¶ 15.** Plaintiffs seek to dispute this fact, but they cite no evidence from the record that supports their position. In fact, the testimony cited by them, when read in context, supports this fact. Donnelly, for instance, testified that he told everyone to keep moving including hypothetical cigarette smokers who

sought to take a hypothetical cigarette break on the sidewalk. See Donnelly Deposition at 57:7-10; see also ¶ 145 below. Other evidence cited by plaintiffs is simply unresponsive to this fact.

48. **Because of the various closures to ingress and egress to and from Penn Station and MSG, and for the other reasons discussed above, the 32nd Street approach to Penn Station and MSG became the primary point of ingress and egress to that venue for thousands of pedestrians and commuters on a daily basis. Smolka Dec. at ¶ 16.** This fact is undisputed by plaintiffs. Plaintiffs' argument about other facts, including that the closures of 7th Avenue and 32nd Street resulted in "a much wider pedestrian expanse" and that another entrance to Penn Station "remained open," is unsupported by the record for reasons discussed above.

49. **Thus, it was critically important to keep that artery of pedestrian traffic, and the adjacent pedestrian walkways that served it, fully open and unimpeded. Smolka Dec. at ¶ 16.** This fact is undisputed by plaintiffs.

50. **The restrictions discussed above, including the limitation on standing on the sidewalk of Seventh Avenue between 31st and 33rd Streets, and standing in the crosswalk at 32nd Street, were implemented only during the period of the 2004 Convention. Smolka Dec. at ¶ 17.** This fact is undisputed by plaintiffs.

**Facts Related To Warnings To Plaintiffs
And Their Arrests On September 1, 2004**

51. **Plaintiffs Marcavage and Lefemine are evangelical ministers from Pennsylvania and South Carolina. Deposition of Michael Marcavage ("Marcavage Depo.") (Exhibit F) at 48:4-8, 54:23; Deposition of Steven Lefemine ("Lefemine Depo.") (Exhibit G) at 4:12, 12:22, 89:19.[2]** This fact is undisputed by plaintiffs.

---

[2] Plaintiff Marcavage testified that he and plaintiff Lefemine prepared together for their depositions with their counsel. Marcavage Depo. at 178:15. Plaintiff Lefemine then attended plaintiff

52. Their ministry generally includes "spreading the truth about abortion and sharing the gospel of Jesus Christ" as well as ministering on subjects such as "atheism, homosexuality, evolution, just a variety of things that people have questions about." Plaintiff Marcavage characterized their ministry as "anti-sin." Marcavage Depo. at 7-8. This fact is undisputed by plaintiffs.

53. Captain Staples retired as Captain with the New York City Police Department ("NYPD") in 2006 after 26 years of service. Declaration of Gerard Staples ("Staples Dec.") (Exhibit H) at ¶ 1. This fact is undisputed by plaintiffs.

54. Captain Staples was employed by the NYPD for over 23 years, and had been a Captain for 7 years, on September 1, 2004. Deposition of Gerard Staples ("Staples Depo.") (Exhibit I) at 17:8-11, 19:1. This fact is undisputed by plaintiffs.

55. On September 1, 2004, Captain Staples was assigned to patrol the perimeter of MSG and was responsible for the supervision of other officers in that area including officers responsible for security and crowd control. Staples Depo. at 30-32; Staples Dec. at ¶ 2. This fact is undisputed by plaintiffs.

56. Sergeant Richard Crespo was assigned the southeast side of 7th Avenue between 31st and 32nd Street during the 2004 RNC. Deposition of Richard Crespo ("Crespo Depo.") (Exhibit J) at 22:10-16. This fact is undisputed by the plaintiffs.

57. P.O. Chris Serrao was assigned to work between 33rd and 32nd Street on 7th Avenue. Deposition of Chris Serrao ("Serrao Depo.") (Exhibit K) at 10:19-25. This fact is undisputed by the plaintiffs.

---

Marcavage's deposition, took notes, and reviewed those notes prior to his own deposition the following day. Lefemine Depo. at 11-12.

58.     Police Officer Dawn Gavin also was assigned to work on September 1, 2004. **Deposition of Dawn Gavin ("Gavin Depo.") (Exhibit L) at 12:21-25, 13:2-8.** This fact is undisputed by the plaintiffs.

59.     **In preparation for the 2004 RNC, officers were told that pedestrians were not allowed to block either vehicular or pedestrian traffic. Deposition of Kenji Ebanks ("Ebanks Depo.") (Exhibit M) at 19:12-24.** Plaintiffs seek to dispute this fact, but their argument is in fact unresponsive to the fact stated. In addition, plaintiffs cite nothing from the record that places into dispute what "officers were told" in preparation for the RNC.

60.     **Officers were told that those wishing to exercise their First Amendment rights had a staging area in the vicinity of 31st and 8th Avenue, which many officers colloquially referred to as a "demonstration area" or "free speech zone." Staples Depo. at 47:21; Serrao Depo. at 27:3-9; Ebanks Depo. at 19:12-24.** This fact is undisputed by the plaintiffs. Plaintiffs' suggestion that demonstrators were required to use the demonstration zone, or that officers were told that demonstrators were required to use the demonstration zone, is unsupported by the record.

61.     **Officers were instructed to tell people who desired to engage in demonstration or other free speech activity that they could do so at the designated area at 31st and 8th Avenue." Staples Depo. at 49:20-23.** This fact is undisputed by the plaintiffs. Plaintiffs' suggestion that demonstrators were required to use the demonstration zone, or that officers were told that demonstrators were required to use the demonstration zone, is unsupported by the record.

62.     **The sidewalk between 32nd Street and 33rd Street along the East side of 7th Avenue was considered an extended part of the "frozen zone." Serrao Depo. at 23-24.** Plaintiffs dispute this fact and restate their points (discussed above) concerning the various nomenclature used by officers for the various zones. This dispute is immaterial because there is no question that plaintiffs were standing in and were arrested in a "no standing" zone.

63.     The police implemented heightened restrictions on the sidewalk between 32nd Street and 33rd Street along the East side of 7th Avenue because of its proximity to the frozen zone. **Crespo Depo. at 58:22-59:7.** Plaintiffs seek to dispute this fact, but they offer no pertinent citations to the record that place this fact into dispute.

64.     Officers were instructed that pedestrians were not permitted to stop on the sidewalk between 32nd Street and 33rd Street along the East side of 7th Avenue on September 1, 2004 and to make sure that pedestrian traffic kept flowing at that location. **Staples Depo. at 43:1-4; Serrao Depo. at 23-24; Gavin Depo. at 19-20; Deposition of Brian Donnelly ("Donnelly Depo.") (Exhibit N) at 38:6-23; Ebanks Depo. at 31:11-17; Deposition of Michelle Burke ("Burke Depo.") (Exhibit O) at 45:13-48:2.** Plaintiffs seek to dispute this fact, but they offer no pertinent citations to the record concerning what "officers were instructed."

65.     Officers were instructed that pedestrians could not stop because it could lead to a build-up of pedestrian traffic at that location. **Donnelly Depo. at 48:5-18.** Plaintiffs seek to dispute this fact, but they offer no pertinent citations to the record concerning what "officers were instructed." Moreover, plaintiffs mischaracterize Officer Gavin's testimony.

66.     Officers were instructed that, if pedestrians were stopped, and instructions were given to them to move along, and those individuals did not comply, the individuals were subject to arrest. **Donnelly Depo. at 41:17- 42:2.** This fact is undisputed by plaintiffs. Plaintiffs' suggestion that defendants "instructed officers to arrest anyone who did not comply with their orders" is not supported by any reference to the record and is, in fact, a gross distortion of the truth.

67.     Immediately prior to their arrival in front of MSG on Wednesday, September 1, 2004, plaintiffs spent a few hours ministering in a park in the Greenwich Village neighborhood of Manhattan. **Marcavage Depo. at 65:5-66:20.** This fact is undisputed by plaintiffs.

68.     At that location, "there were people gathering around talking to us" and plaintiffs were "having a debate over [their] teachings." Marcavage Depo. at 67. This fact is undisputed by plaintiffs.

69.     Members of the police department ordered plaintiffs to disperse from that location. Marcavage Depo. at 67:24, 77:9. This fact is undisputed by plaintiffs.

70.     Plaintiffs refused to disperse. Marcavage Depo. at 68:3, 77:14. This fact is undisputed by plaintiffs.

71.     Plaintiff Marcavage testified that "We stayed there. It was obvious that we did not leave." Marcavage Depo. at 68:8. This fact is undisputed by plaintiffs.

### At The Madison Square Garden Location

72.     Later that day, during the Convention at MSG, plaintiffs Marcavage and Lefemine were standing on the public sidewalk in front of the Pennsylvania Hotel, on the east side of Seventh Avenue, between 32nd and 33rd Streets, across the street from MSG. Complaint at ¶ 15; Marcavage Depo. at 69:16, 79:24. This fact is undisputed by plaintiffs.

73.     At that location, plaintiffs were standing together and each plaintiff carried a large sign with him. The approximate dimensions of the signs were 4 feet by 6 feet; and 3 feet by 5 feet. Marcavage Depo. at 69:20-70:13; 73:6; Lefemine Depo. at 39:8, 118:15. This fact is undisputed by plaintiffs.

74.     Plaintiffs stood in that location for between 10 and 15 minutes before being approached by officers. Lefemine Depo. at 131:16. This fact is undisputed by plaintiffs.

75.     At that time, Captain Staples was on duty and "monitoring the traffic flow and activity in the area" of MSG. Staples Depo. at 53:17-18. This fact is undisputed by plaintiffs.

76.     Captain Staples observed "a large flow of traffic coming out of Penn Station from the West side of 7th Avenue crossing the street to go [] Eastbound on 32nd [Street]." Staples Depo. at 54:8-11, 62:25, 64:14. This fact is undisputed by plaintiffs.

77.     In the time that plaintiffs were in that area, "there were hundreds upon hundreds of people walking up and down the sidewalk" and "there may have been thousands [of people] that [they] viewed in that area." Marcavage Depo. at 80:16, 82:25, 97:3. This fact is undisputed by plaintiffs.

78.     Captain Staples considered that location to be part of the exit to Penn Station and part of the exit out of the subway system on that day. Staples Depo. at 87:13, 88:17, 88:21. This fact is undisputed by plaintiffs.

79.     According to plaintiff Lefemine, "this was a busy place[.]" Lefemine Depo. at 133:25. "We were very close to where the pedestrians come out of the Penn Station entrance over on the 7th Avenue side near that corner of 32nd and 7th Avenue; right in that vicinity. People [were] going all over the place around us." Lefemine Depo. at 161:7-11. This fact is undisputed by plaintiffs.

80.     There was a higher number of people than normal walking in that area, which was "a major pedestrian thoroughfare." Gavin Depo. at 56-58. Plaintiffs seek to dispute this fact, but plaintiffs cite to no evidence in the record.

81.     Plaintiffs were "attempting to establish [themselves] there so [they] would be able to hand out information to the hundreds and hundreds of people traveling up and down the sidewalk." Marcavage Depo. at 83:21-84:2. This fact is undisputed by plaintiffs.

82.     Plaintiffs carried their literature with them (and each carried a tape recorder). Marcavage Depo. at 63:5, 63:13, 74:18-22; Lefemine Depo. at 118:22, 120:21. This fact is undisputed by plaintiffs.

83.     While standing at that location, they "may have offered literature to people[.]" **Lefemine Depo. at 131:20, 135:14.** This fact is undisputed by plaintiffs.

84.     Plaintiffs also intended to engage the passersby in conversation at that location. In particular, plaintiffs intended "[to] speak to people concerning what the word of God teaches with regards to abortion." **Marcavage Depo. at 63:2, 84:12.** This fact is undisputed by plaintiffs.

85.     Plaintiffs could not recall any other individuals who were standing in that area; nor any other individuals ministering in that area; nor any individuals protesting or demonstrating in that area; nor any other individuals carrying signs in that area. **Marcavage Depo. at 81:8-17, 115:4; Lefemine Depo. at 137:11-138:2.** This fact is undisputed by plaintiffs.

### Interaction Between Plaintiffs And Police

86.     Plaintiffs were approached by uniformed members of the New York Police Department ("NYPD"), who advised plaintiffs that they were in a "frozen zone" and repeatedly directed plaintiffs to leave that area. **Complaint at ¶¶ 17-21; Plaintiffs' Audio Recording (Exhibit P); Transcript of Plaintiffs' Audio Recording (Exhibit Q);[3] Marcavage Depo. at 82:15, 87:4, 88:17, 91:20.** This fact is undisputed by plaintiffs.

87.     When P.O Serrao first observed the plaintiffs, they were close to the curb along 7th Avenue, speaking with other officers. **Serrao Depo. at 34:14-19, 62:5-11.** This fact is undisputed by the plaintiffs. Plaintiffs mischaracterize Officer Serrao's testimony.

88.     P.O. Serrao overheard the conversation between plaintiffs and the other officers, observed that plaintiffs were not complying with orders, and specifically heard the

---

[3] The Transcript of Plaintiffs' Audio Recording was prepared by defendants based upon a review of the audiotape produced to defendants by the plaintiffs. The identities of the speakers was determined by defendants based, in part, upon deposition testimony provided in this case.

plaintiffs "asking the same question over and over again about, you know, why can't we stand here, why can't we do this." **Serrao Depo. at 34:20-35:6.** Plaintiffs do not dispute what PO Serrao overheard and are in no position to quibble with Serrao's understanding of what he heard and other observations.

89. **P.O. Serrao told plaintiffs they were not allowed to stand there. Serrao Depo. at 35:14-20.** This fact is undisputed by plaintiffs. Plaintiffs' remaining arguments are unresponsive to this fact and immaterial.

90. **P.O. Serrao identified himself on the audio recording saying: "There's a Sergeant right here," "You guys got to go," and "You can't stay here." Serrao Depo. at 45:14-18; Transcript of Plaintiffs' Audio Recording.** This fact is undisputed by plaintiffs.

91. **Plaintiffs twice sought to "appeal" the officers' orders to other members of the NYPD and the officers twice assented to those requests. Transcript of Plaintiffs' Audio Recording; Marcavage Depo. at 88:18, 97:13.** This fact is undisputed by plaintiffs.

92. **Plaintiffs were permitted to "appeal" the matter first to Community Affairs Officer Kenji Ebanks and then to Captain Gerard Staples. Transcript of Plaintiffs' Audio Recording; Marcavage Depo. at 97:13, 111:3-6.** This fact is undisputed by plaintiffs.

93. **It is the plaintiffs' "standard practice" to appeal such matters to a higher-ranking officer. Plaintiff Lefemine testified that "When an officer – you know, a street level, patrol level officer gives us an instruction, that is unconstitutional, we try to appeal to a higher person that might understand the law." Lefemine Depo. at 168:4-8.** This fact is undisputed by plaintiffs.

94. **The officers, including P.O. Ebanks, walked plaintiffs south on the sidewalk, to 32nd Street, then crossed to the southeast corner of 32nd Street and 7th Avenue, while discussing the matter with plaintiffs. Marcavage Depo. at 96:12-18, 104:10.** This fact is

undisputed by plaintiffs. Plaintiffs' suggestion that the officers indicated that "all expressive activity must take place" in the demonstration area is not supported by any citation to the record.

95. **P.O. Ebanks advised plaintiffs that they must leave the restricted zone; and that they could continue their expressive activities by moving to a "free speech zone" approximately one block west and one block south (31st Street and 8th Avenue) of where they were standing. Complaint at ¶¶ 22, 24; Transcript of Plaintiffs' Audio Recording; Marcavage Depo. at 91:17, 105:14.** This fact is undisputed by plaintiffs. Plaintiffs' suggestion that the officers indicated that their expressive activities "were restricted" to a free speech zone is not supported by any citation to the record.

96. **The southwest corner of MSG directly abuts the demonstration area at the corner of 31st Street and 8th Avenue to which the plaintiffs were directed by the officers. The Court may take judicial notice of this fact. For the Court's convenience, defendants submit a map depicting the streets in the immediate vicinity of MSG (Exhibit R).** Plaintiffs seek to dispute this fact, but they cite no evidence in the record to suggest otherwise. See ¶¶ 18, 37 above. Plaintiffs' characterization of the officers' testimony with respect to other facts is unresponsive and mischaracterizes their testimony.

97. **P.O. Ebanks advised the plaintiffs that they would be within sight and sound of the Convention at 31st and 8th Avenue and asked the plaintiffs "Isn't that close?" Transcript of Plaintiffs' Audio Recording.** Plaintiffs seek to dispute this fact, but they cite no evidence in the record to suggest otherwise. See ¶¶ 18, 37 above. Moreover, because the location of the demonstration zone is undisputed, the question of whether it was within sight and sound is a matter of law for the Court.

98.     Plaintiffs understood that P.O. Ebanks wanted them to leave the area. Complaint at ¶¶ 24-25; Transcript of Plaintiffs' Audio Recording; Marcavage Depo. at 94:20; Lefemine Depo. at 146:7, 164:5.  This fact is undisputed by plaintiffs.

99.     But plaintiffs objected to the Sergeant's direction that they do so and his suggestion that they continue their expressive activities in the "free speech zone."  Complaint at ¶¶ 24-25; Transcript of Plaintiffs' Audio Recording; Marcavage Depo. at 94:20.  This fact is undisputed by plaintiffs.

100.     Plaintiffs asked P.O. Ebanks, "So what do you think about the First Amendment being just trampled because of these particular things that you call frozen zones? Do you have any comment on that?" Complaint at ¶ 23; Transcript of Plaintiffs' Audio Recording; Marcavage Depo. at 105:2.  This fact is undisputed by plaintiffs.

101.     Plaintiffs objected that "you can't just lump us all together [in the demonstration area]; [t]here's different people with different views; we don't want to be just thrown in a big area where everyone else has different opinions; we want to be able to express ourselves [in] separate areas in separate locations."  Complaint at ¶ 24; Transcript of Plaintiffs' Audio Recording; Marcavage Depo. at 105:14.  This fact is undisputed by plaintiffs.

### Interaction Between Plaintiffs And Captain Staples

102.     Captain Staples observed the plaintiffs "[make] their way to the Southeast corner of 32nd Street and 7th Avenue."  Staples Depo. at 58:25.  This fact is undisputed by plaintiffs.

103.     When Sgt. Crespo first observed the plaintiffs, they were in the middle or closer to the crosswalk on the southeast corner of 32nd Street and 7th Avenue.  Crespo Depo. at 33-35.  This fact is undisputed by plaintiffs.  The deposition testimony cited by plaintiffs does not support plaintiffs' contention that they were at that location because they were talking to Staples.

104.	**Captain Staples observed that plaintiffs "were stopped on the corner and holding up placards, signs; and persons trying to exit the subway system going Eastbound had to walk around them." Staples Depo. at 60:3-6.** This fact is undisputed by plaintiffs. Plaintiffs dispute the fact that they were blocking pedestrian traffic. However, this is a legal argument and is improper in a 56.1 statement, nor has plaintiff cited to any evidence that would somehow contradict that this is what Captain Staples observed.

105.	**Captain Staples observed that the plaintiffs' signs were "approximately four feet wide and maybe five feet in height." Staples Depo. at 62:22; Marcavage Depo. at 69:20-70:13; 73:6; Lefemine Depo. at 39:8, 118:15.** This fact is undisputed by plaintiffs.

106.	**Captain Staples observed that plaintiffs "were spaced almost shoulder to shoulder." Staples Depo. at 62:23-25.** This fact is undisputed by plaintiffs.

107.	**Captain Staples observed that "there was no other way for people to leave that area" than to pass by where plaintiffs were standing. Staples Depo. at 88:12.** Plaintiffs seek to dispute this fact by suggesting that defendants mischaracterized the testimony. Because the testimony is a direct quote, there can be no mischaracterization. Nor have plaintiffs cited to any evidence in the record that contradicts this testimony. Moreover, without support from the record, plaintiffs cannot dispute what "Captain Staples observed," which is the only fact at issue here. In addition, plaintiffs are wrong when they state that there is no evidence other than Captain Staples' testimony that pedestrian traffic was obstructed. See Staples Depo. at 60:11-13, 62:23-25; Gavin Depo. at 47-48; Crespo Depo. at 34:18-35:9; Donnelly Depo. at 11:17-13:12.

108.	**Plaintiffs "were blocking the entrance onto the sidewalk from the street" and were impeding the flow of pedestrians on the crosswalk. Staples Depo. at 60:11-13, 62:23-25; Gavin Depo. at 47-48; Crespo Depo. at 34:18-35:9; Donnelly Depo. at 11:17-13:12.** Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.

109.     **Captain Staples determined that plaintiffs were violating the "no standing"** **rule and blocking pedestrian traffic. Staples Dec. at ¶ 4.** Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.   Nor is it clear, absent support form the record, that plaintiffs could dispute "Captain Staples' determin[ation]" based on what Captain Staples himself observed.   Defendants do not dispute that Captain Staples testified that the area where the plaintiffs were arrested had a large flow of traffic.

110.     **Captain Staples "was told [by the Community Affairs officer] that** **[plaintiffs] would not leave." Staples Depo. at 63:4.** Plaintiffs seek to dispute this fact, but they cite to no evidence in the record.   In any event, under long-established federal law, Staples would be deemed to share the knowledge of each and every other officer even if another officer had not told him that plaintiffs would not leave.

111.     **Captain Staples observed that plaintiffs were provided numerous warnings** **and ample opportunity to disperse. Staples Dec. at ¶ 4.** Plaintiffs seek to dispute this fact, but they cite  no evidence in the record to demonstrate that this is not what "Captain Staples observed."

112.     **Captain Staples approached the plaintiffs and "was within conversational** **range" of a few feet. Lefemine Depo. at 169:14.** This fact is undisputed by the plaintiffs.

113.     **Captain Staples affirmed the orders of the other officers and repeatedly** **directed the plaintiffs to leave the restricted zone immediately. Complaint at ¶ 25; Transcript of** **Plaintiffs' Audio Recording; Marcavage Depo. at 109:22.** This fact is undisputed by the plaintiffs.

114.     **Captain Staples also advised plaintiffs at least once that "Right now you're** **blocking traffic with the sign." Transcript of Plaintiffs' Audio Recording; Marcavage Depo. at** **159:10-12; Staples Depo. at 59:18-20, 63:5-24, 66-67:13; Gavin Depo. at 47:20-24.** This fact is undisputed by the plaintiffs.

115.    **Sgt. Crespo heard Captain Staples tell the plaintiffs that they had to leave, and that if they did not leave, they would be arrested. Crespo Depo. at 35:22-25.** Plaintiffs seek to dispute this fact, but they cite to no evidence to contradict that this is what "Sgt. Crespo heard Captain Staples tell the plaintiffs."

116.    **Plaintiffs had no difficulty hearing the Captain. Lefemine Depo. at 169:25. Plaintiff Lefemine testified, in particular, that "I think I remember someone saying that [you are blocking pedestrian traffic]." Lefemine Depo. at 171:6-8.** This fact is undisputed by the plaintiffs.

117.    **In all, no fewer than three officers, including P.O. Ebanks and Captain Staples, ordered plaintiffs to leave the restricted zone both before and after permitting plaintiffs an opportunity "to appeal" the matter up the chain of command. Complaint at ¶¶ 17-25; Transcript of Plaintiffs' Audio Recording; Marcavage Depo. at 104:24-105:2.** Plaintiffs seek to dispute this fact, but they cite to no pertinent evidence as to how many officers "ordered plaintiffs to leave the restricted zone." To the extent that plaintiffs quibble with the term "restricted zone" rather than "no standing" area, that difference is not material. Plaintiffs cite to testimony that has nothing to do with the fact asserted.

118.    **Captain Staples "instructed [plaintiffs] several times [] that if they want to show their signs [], that they were to go to 31st and [8th Avenue] where there was an area where people could congregate." Staples Depo. at 63:8-10, 64:15-18.** This fact is undisputed by the plaintiffs.

### Recorded Warnings And Instructions To Plaintiffs

119.    **Plaintiffs were ordered to leave the restricted zone and advised that they could continue their expressive activities at the nearby demonstration area no fewer than 17 times before their arrests. Transcript of Plaintiffs' Audio Recording; Marcavage Depo. at 149:3-8, 151:9.** Plaintiffs seek to dispute this fact, but they cite to no evidence to demonstrate that this is not

what happened. Once again, they cite to testimony that has nothing to do with the fact asserted. See ¶ 62 above. The statements on the audio recording speak for themselves. To the extent that plaintiffs quibble with the term "restricted zone" rather than "no standing" area, that difference is not material.

120. **The orders were given in the following terms: "You can't be right here; You can't; You can't; Not at all; Not right here; Not today; You can't; You can't be protesting out here; [You can go to] 8ᵗʰ Avenue; 31ˢᵗ and 8ᵗʰ Avenue; [8ᵗʰ and] 31ˢᵗ; Okay, so just go now; You have to go – you have to go now; You have to leave this area; You have to leave this area now; Right now you have to leave." Transcript of Plaintiffs' Audio Recording (Exhibit Q); Marcavage Depo. at 149:3-8, 151:9.** This fact is undisputed by plaintiffs.

121. **Plaintiffs did not leave. Complaint at ¶ 25; Lefemine Depo. at 164:7.** Plaintiffs seek to dispute this fact, but they cite testimony that has nothing to do with this stated fact. Plaintiffs' pleading (which constitutes and admission) and plaintiffs' own testimony (also an admission) confirms that plaintiffs chose not to leave after being told to move. Plaintiff Lefemine testified that it was his understanding that the police wanted them to leave the area, and his decision was that "I chose not to leave the area." LeFemine Depo. at 171:19-24.

122. **Captain Staples personally observed that plaintiffs made no movement to comply with those orders. Staples Dec. at ¶ 4; Gavin Depo. at 47:20-24.** Plaintiffs seek to dispute this fact, but they cite to no pertinent evidence. They cite to testimony that has nothing to do with the fact asserted.

### Plaintiffs' State Of Mind

123. **Based upon the foregoing facts and circumstances, Captain Staples made the assessment that plaintiffs had no intention to comply with the officers' orders. Staples Dec. at ¶ 4.** Plaintiffs seek to dispute this fact, but they cite to no evidence that contradicts the fact asserted. They cite to testimony that has nothing to do with the fact asserted.

124.    **Plaintiff Marcavage confirmed that his desire was not to comply with the officers' orders but "to continue a discussion." Marcavage Depo. at 113:6.** Plaintiffs seek to dispute this fact, but they cite to no evidence that contradicts the fact asserted. Plaintiffs cite to testimony that has nothing to do with the fact asserted. Plaintiffs' own testimony (an admission) confirms that plaintiffs chose not to leave after being told to move. Plaintiff Lefemine testified that it was his understanding that the police wanted them to leave the area, and his opinion was to "leave the area or continue in a dialogue with them and I chose not to leave the area." LeFemine Depo. at 171:19-24.

125.    **Plaintiffs "continued [a] discussion that was just not being abandoned [by them]." Marcavage Depo. at 109:23-110:2.** This fact is undisputed by plaintiffs.

126.    **Plaintiff Lefemine explained that "[the police] were wanting us to leave the area and we were wanting to continue the discussion." Lefemine Depo. at 171:22, 173:8-10.** This fact is undisputed by plaintiffs.

127.    **Plaintiff Lefemine "[tried] to determine from the officer, where is he at in terms of telling us to leave; are we risking arrest. . . . I wanted to learn from Captain Staples are we at a place that if we do not obey your instruction to leave, are we at a place where you are threatening us with arrest[.]" Lefemine Depo. at 159:1-8.** This fact is undisputed by plaintiffs.

128.    **After they were told to leave and after they were told they were blocking pedestrian traffic, "[they] could have left. That would have been our own choice – our own freedom of movement[.]" Lefemine Depo. at 173:14-19, 176:20.** Plaintiffs seek to dispute this fact, but this fact is based on plaintiffs' own deposition testimony (an admission).

129.    **Plaintiff Lefemine "chose not to leave the area" and "elected to stay there in the presence of the police." Lefemine Depo. at 171:24, 172:24.** This fact is undisputed by plaintiffs.

## Arrests Of Plaintiffs

130. **Captain Staples ordered the arrests of plaintiffs Marcavage and Lefemine thereafter. Complaint at ¶ 25; Marcavage Depo. at 118:21; Staples Dec. at ¶ 4.** This fact is undisputed by plaintiffs.

131. **"[The] decision to make the arrest was sooner than [plaintiffs] had assessed[.]" Lefemine Depo. at 172:7.** This fact is undisputed by plaintiffs.

132. **When plaintiffs advised Captain Staples that "[they] were not intending to get arrested," Captain Staples twice apologized by saying "I'm sorry." Transcript of Plaintiffs' Audio Recording.** This fact is undisputed by plaintiffs.

133. **Sgt Crespo was assisted in the arrests by Officer Donnelly. Staples Depo. at 69-70.** This fact is undisputed by plaintiffs.

134. **Captain Staples observed plaintiff Marcavage "wiggle[] and wiggle[] and drop[] to his knees" "when [the officers] approached to arrest him." Staples Depo. at 81:13-82:2, 83:1-3; Crespo Depo. at 44:8-20.** This fact is undisputed by plaintiffs.

135. **Upon being placed in handcuffs, plaintiff Marcavage sat down "in protest." Marcavage Depo. at 121:19.** Plaintiffs seek to dispute this fact, but defendants have quoted to Marcavage's own testimony (an admission). Moreover, Officer Donnelly testified that when he first saw plaintiff Marcavage, the plaintiff was on the ground. Donnelly Depo. at 66:12-17.

136. **The police had to lift Marcavage off the ground. Crespo Depo. at 44:21-25.** Plaintiffs dispute this fact, but a review of the testimony cited by plaintiff reveals that plaintiff Marcavage does not actually remember "how it went down." Marcavage Depo. at 122:7-20. Thus, this fact should be deemed undisputed.

137. **Captain Staples was not involved in any other arrests during the 2004 RNC. Staples Depo. at 72-73.** This fact is undisputed by plaintiffs.

138.    **By his own account, plaintiff Lefemine has been arrested between 20 and 30 times, and has been convicted between 10 and 20 times, in connection with conduct substantially similar to the conduct in which he engaged on September 1, 2004. Lefemine Depo. at 58:3-6, 28-88.** This fact is undisputed by plaintiffs.

139.    **Among his other convictions, plaintiff Lefemine previously has been convicted of obstructing government administration in New York. Lefemine Depo. at 81-83.** Plaintiffs seek to dispute this fact, but they cite to the same deposition testimony during which plaintiff Lefemine testifies that he was found "guilty" of that charge.

140.    **By his own account, plaintiff Marcavage has been arrested at least seven times, and has been convicted at least once, in connection with conduct substantially similar to the conduct in which he engaged on September 1, 2004. Marcavage Depo. at 19:4, 24:2, 27:2, 31:5, 181:25, 182:9, 189:19, 193:10, 195:16.** This fact is undisputed by plaintiffs.

### Facts Related To Charges And Dispositions

141.    **For his conduct on September 1, 2004, plaintiff Marcavage was charged with disorderly conduct and resisting arrest. Complaint at ¶ 34; Marcavage Depo. at 144:2; Criminal Court Complaint of Michael Marcavage (Exhibit S).** This fact is undisputed by plaintiffs.

142.    **The charges against plaintiff Marcavage were dismissed. Marcavage Depo. at 144:22; Certificate of Disposition of Michael Marcavage (Exhibit T).** This fact is undisputed by plaintiffs.

143.    **Plaintiff Lefemine was charged with disorderly conduct. Complaint at ¶ 34; Criminal Court Complaint of Steven Lefemine (Exhibit U).** This fact is undisputed by plaintiffs.

144.    **Plaintiff Lefemine accepted an ACD. Lefemine Depo. at 187:13; Certificate of Disposition of Steven Lefemine (Exhibit V).** This fact is undisputed by plaintiffs.

## Facts Related To First Amendment, Equal Protection And Other Issues

**145.    Plaintiffs could not recall any other individuals who were standing in that area; nor any other individuals ministering in that area; nor any individuals protesting or demonstrating in that area; nor any other individuals carrying signs in that area.  Marcavage Depo. at 81:8-17, 115:4; Lefemine Depo. at 137:11-138:2.**  These facts are undisputed by plaintiffs. Plaintiffs interject that the police officers testified that others could stand and take pictures as well as smoke cigarettes.  This mischaracterizes their testimony.  Officer Crespo testified, "I mean, you have tourists that would take pictures with the cops or take pictures with their families.  [] *[They] were allowed to take pictures as long as they just kept going through.*   Crespo Depo. at 43:4-13 (emphasis added).  Officer Donnelly testified that someone could leave their building to smoke a cigarette, but still had to keep moving.  Donnelly Depo. at 56-57.

**146.    At his deposition, plaintiff Marcavage testified that he has "no idea" why he was arrested.  Marcavage Depo. at 145:11.**  This fact is undisputed by plaintiffs.

**147.    At his deposition, plaintiff Marcavage could not recall whether any of the officers said anything "pertaining to the contents of [plaintiffs'] speech."  Marcavage Depo. at 161:7.**  Plaintiffs seek to dispute this fact, but it is a direct quote from the plaintiff's deposition (an admission).   Plaintiffs argue that defendants made derogatory comments regarding the sign that plaintiff Marcavage was displaying by asking if he "was kidding."  Marcavage points to no evidence in the record to support his contention that the comment had anything to do with the content of plaintiffs' signs as opposed to the independent fact that plaintiffs were standing in the "no standing" zone with very large signs.  In any event, this fact appears to be immaterial in light of plaintiffs' abandonment of their First Amendment retaliation claim.

148. **At his deposition, plaintiff Lefemine could not recall whether any officers made any remarks about the content of his speech. Lefemine Depo. at 173:24.** This fact is undisputed by plaintiffs.

149. **Both plaintiffs have continued to exercise their First Amendment rights since their arrests on September 1, 2004. Marcavage Depo. at 182, 189, 196; Lefemine Depo. at 88.** This fact is undisputed by plaintiffs.

150. **Plaintiff Marcavage was arrested again in October 2004, October 2005, and July 2006 while exercising his First Amendment rights on the subjects of abortion and homosexuality. Marcavage Depo. at 182, 189, 196.** This fact is undisputed by plaintiffs.

151. **Plaintiff LeFemine has been ministering on the street three or four times per week since 2004. Lefemine Depo. at 88.** This fact is undisputed by plaintiffs.

152. **Plaintiffs objected that "you can't just lump us all together [in the demonstration area]; [t]here's different people with different views; we don't want to be just thrown in a big area where everyone else has different opinions; we want to be able to express ourselves [in] separate areas in separate locations." Complaint at ¶ 24; Transcript of Plaintiffs' Audio Recording; Marcavage Depo. at 105:14.** This fact is undisputed by plaintiffs.

153. **Neither plaintiff sustained any physical injury and neither plaintiff was treated for any emotional distress in connection with the incidents of which they complain in this case. Marcavage Depo. at 11:22, 15:23, 140:16; Lefemine Depo. at 14:3.** This fact is undisputed by plaintiffs. That plaintiffs may have testified regarding their alleged "emotionally and physically draining" time in custody is not material to any issue on this motion.

154. **Plaintiff Marcavage confirmed that the audio recording submitted to the Court as Exhibit P (from which the transcript of the recording was made (Exhibit Q)), accurately represents what was said during the incident. Marcavage Depo. at 156:19.** This fact is

undisputed by plaintiffs. Plaintiffs seek to dispute the accuracy of the transcript of the audio recording, but they give no reason to believe that that transcript is not accurate.

## Additional Material Facts Added by Plaintiffs:

### Plaintiffs' Expressive Activity

155.    Defendants do not dispute the fact in ¶ 155.

156.    Defendants dispute ¶ 156 and note that plaintiffs' contention that their backs were to the wall is contradicted by plaintiff Marcavage's own testimony (an admission): "there was distance behind us, between our back and the wall." Marcavage Depo. at 81:1-2. Nevertheless, this is not material.

157.    Defendants do not dispute the fact that at least_hundreds of people walked by plaintiffs while they were standing on the sidewalk between 32nd Street and 33rd Street on 7th Avenue.

158.    Defendants dispute the fact that, while plaintiffs were standing on the sidewalk between 32nd Street and 33rd Street on 7th Avenue, no one asked them to move or even said "excuse me" to them. The plaintiffs were asked, at a minimum, by the police to move, as plaintiff Marcavage testified (an admission). Marcavage Depo. at 87:3-5.

159.    Defendants do not dispute the fact that the police first approached the plaintiffs while they were standing on the sidewalk between 32nd Street and 33rd Street on 7th Avenue. Nor do defendants dispute the fact that plaintiffs were told that they could go to the demonstration area.

160.    Defendants do not dispute that plaintiffs had been told they could not stand on the sidewalk between 32nd Street and 33rd Street on 7th Avenue. Defendants dispute that plaintiffs complied by walking  south on 7th Avenue as they questioned the police officers. Plaintiff Lefemine testified (an admission) that it was his understanding that the police wanted them to leave the area, and his opinion was to "leave the area or continue in a dialogue with them and I chose not to leave the area." LeFemine Depo. at 171:19-24.

- 29 -

161.     Defendants do not dispute that Captain Staples was trained in First Amendment issues during his academy training.

162.     Defendants do not dispute that Captain Staples first saw the plaintiffs walking south on 7th Avenue on the sidewalk between 32nd and 33rd Streets on 7th Avenue.

163.     Defendants do not dispute that Captain Staples next saw the plaintiffs engaged in a conversation with the other officers on the southeast corner of 7th Avenue and 32nd Street.

164.     Defendants dispute that when Captain Staples saw the plaintiffs engaged in a conversation with the officers at the southeast corner of 7th Avenue and 32nd Street, they were stopped at that location because that is where the officers chose to stop.  Plaintiffs admitted that they wanted to stop to continue the discussion as to why they could not remain in the area.  Plaintiffs "continued [a] discussion that was just not being abandoned [by them]."  Marcavage Depo. at 109:23-110:2.  Plaintiff Lefemine explained that "[the police] were wanting us to leave the area and we were wanting to continue the discussion."  Lefemine Depo. at 171:22, 173:8-10.  Plaintiff Lefemine "[tried] to determine from the officer, where is he at in terms of telling us to leave; are we risking arrest. . . . I wanted to learn from Captain Staples are we at a place that if we do not obey your instruction to leave, are we at a place where you are threatening us with arrest[.]"  Lefemine Depo. at 159:1-8.  After they were told to leave and after they were told they were blocking pedestrian traffic, "[they] could have left.  That would have been our own choice – our own freedom of movement[.]"  Lefemine Depo. at 173:14-19, 176:20.  Plaintiff Lefemine "chose not to leave the area" and "elected to stay there in the presence of the police."  Lefemine Depo. at 171:24, 172:24.

165.     Defendants do not dispute that plaintiff Marcavage testified that he felt uncomfortable.  Plaintiff's testimony was:  "Well, I didn't feel comfortable with the situation.  So I wanted to see if we could appeal that to another officer who might be more knowledgeable about our constitutional rights."

166. Defendants do not dispute the fact that plaintiff Marcavage made his objection to moving known to Captain Staples.

167. Defendants do not dispute that Captain Staples approached the plaintiffs while they were talking to the other officers.

168. Defendants do not dispute that Captain Staples stated "You have to leave this area now. You have to leave this area now." And the audio recording contains the conversation.

169. Defendants do not dispute that Captain Staples advised plaintiffs that "You have to leave," that they were blocking pedestrian traffic and that they would be arrested.

170. Defendants dispute this fact, which seriously mischaracterizes Chief Smolka's testimony. The pertinent testimony is as follows: "Are there any instances in which you can walk on the sidewalk with a group and not violate *parading without a permit*?" A. Probably. Q. What are those circumstances? A. Generally speaking, if the sidewalk is wide enough to accommodate other passersby and you weren't interfering with other people's ability to walk, you would decide whether that would be okay." Chief Smolka's testimony was given on hypothetical facts, has nothing to do with the separate violation of *disorderly conduct*, and was not given in light of the facts here.

171. Defendants dispute this fact. Plaintiffs cite to no evidence to support this fact, and although plaintiffs rely on ¶10 in their Declaration, defendants note that there is no such paragraph. In any event, this fact is not material to any issue on this motion.

172. Defendants do not dispute that New York Penal Law Section 240.20(5) prohibits pedestrians from obstructing pedestrian traffic with "intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof." As for plaintiffs' conjecture that, because of the existence of this statute, the City "did not need to create a 'no standing' policy to ensure that pedestrian traffic on the public streets did not become congested," there is no evidence in the record to support it and plaintiffs cite to none. In addition, plaintiffs ignore the undisputed facts contained in ¶¶ 7, 8, 9, 10,

11, 12, 13, 14, 15, 31, 32, 33, 35, 36, 37, 38, 39, 43, 44, 45, 48, and 49 of Defendants' Statement of Undisputed Facts. Plaintiffs also ignore the fact that the conduct prohibited by the "no standing" rule was not co-extensive with the conduct prohibited by the disorderly conduct statute (although their coverage may have overlapped to some degree). To the extent that plaintiffs seek to make legal argument here, that argument should be rejected because it is inappropriate in a Rule 56.1 statement.

Dated: New York, New York
      March 6, 2009

                        Respectfully submitted,

                        MICHAEL A. CARDOZO
                        Corporation Counsel of the City of New York
                        Attorneys for Defendants
                        100 Church Street, Room 3-130
                        New York, New York 10007
                        212.788.8026 (ph)
                        212.788.9776 (fax)

By:           _____
                        James Mirro, Esq.
                        Alexis L. Leist, Esq.
                        Cheryl L. Shammas, Esq.
                        Special Federal Litigation Division